<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **ROBERT J PFLEGER**  *Plaintiff,*  v.  **COMMISSIONER OF SOCIAL SECURITY,**  *Defendant.* | **Civil Action No. 20-10757**  **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Robert Pfleger's ("Plaintiff") request for review of Administrative Law Judge Hilton R. Miller's ("Judge Miller" or the "ALJ") decision regarding Plaintiff's application for Supplemental Security Income ("SSI") Benefits and Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

  **A.  Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but the Commissioner's factual findings must be affirmed if they are supported by substantial evidence. <u>Markle v. Barnhart</u>, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." <u>Ventura v. Shalala</u>, 55 F.3d 900, 901 (3d Cir. 1995) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>McCrea v.</u>

1

Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence "need not rise to the level of a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the [Plaintiff] and corroborated by family and neighbors; and (4) the [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a claimant is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the claimant is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental

2

activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the claimant is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the claimant is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the claimant is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the claimant's residual functional capacity ("RFC") to perform work activities despite the limitations from the claimant's impairments. 20 C.F.R. §§ 416.920(e); 416.945. In considering a claimant's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 416.920(e). Then, at step four, the Commissioner must decide if the claimant has the RFC to perform his past relevant work. 20 C.F.R. §416.920(f). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the claimant is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that

[the claimant] can do, given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The claimant bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II. BACKGROUND

### A. General Background

Plaintiff applied for SSI and DIB in 2017, when he was 38 years old. Administrative Transcript ("Tr.") 273-82, ECF No. 6. Plaintiff alleged disability due to bipolar disorder, intermittent explosive disorder, borderline personality disorder, panic disorder, major depressive disorder, generalized anxiety disorder, and arthritis of the hands, back, and knees. Tr. 41. Plaintiff completed up to ninth grade in school and has a GED. Tr. 40. He has work experience as a forklift operator, order puller, cable installer, and grocery packer. Tr. 44-45.

In a Function Report dated July 24, 2017, Plaintiff reported that he lived in an apartment with a roommate, Tr. 313, though he more recently reported that he lives with his mother, Tr. 47. He stated that he wakes up, eats breakfast, tries to exercise and stretch, goes to his doctor appointments, and stays home most of the time because he does not like to go outside unless he must. Id. He stated that he has a pet that he feeds, walks, and gives love and shelter, and that his friend walks and feeds it when he cannot. Tr. 314. Plaintiff also reported that he can prepare any type of meal and cooks about three times a week and that he is able to do housework, cleaning, and laundry when he feels like it. Tr. 315.

Plaintiff reported that when he goes out, he either walks or drives a car and that he shops a few times a month in stores and online. Tr. 316. He enjoys watching television, riding his bike, reading, and playing video games. Id. He explained that he has basic interaction with others but

4

that he does not go out often due to anxiety and because he does not like crowds. Tr. 317. He also frequently fights with family and friends. Id.[1]

### B. Procedural History

Plaintiff filed applications for DBI and SSI on July 18, 2017 alleging that he became disabled on October 15, 2016. Tr. 273-82. His claims were initially denied on October 25, 2017, and again on reconsideration on May 4, 2018. Tr. 89-90, 117-18. On May 29, 2018, Plaintiff requested a hearing, and the claimant appeared and testified at the hearing before Judge Miller on April 9, 2019 in Jersey City, New Jersey. Tr. 162-63, 37-88. On May 6, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. Tr. 7-23. The Appeals Council denied Plaintiff's request for review on June 19, 2020. Tr. 1-5. This Action followed.

### C. ALJ Decision

The ALJ determined that Plaintiff was not disabled under the five-step framework. At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since October 15, 2016. Tr. 12. At step two, the ALJ determined that Plaintiff's osteoarthritis, obesity, bipolar disorder, intermittent explosive disorder, personality disorder, cannabis abuse disorder, and anxiety disorder qualified as severe impairments. Tr. 13. The ALJ noted that anything else mentioned briefly in the record but not specifically mentioned in his decision was not considered "severe" because the impairments revealed such minimal effect on Plaintiff that they are not expected to interfere with his ability to work. Id. At step three, the ALJ found that none of Plaintiff's impairments, individually or collectively, met or medically equaled the criteria of a listed impairment. Tr. 13-14.

---

[1] Defendant has summarized the medical evidence in its brief. See Def. Mem. at 2-6, ECF No. 17. The Court will address medical evidence only where necessary to the adjudication of Plaintiff's claim in Section III, infra.

5

Before moving on to step four, the ALJ determined that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), subject to the following limitations:

> (1) occasionally lift and/or carry 20 pounds; (2) frequently lift and/or carry 10 pounds; (3) stand and/or walk with normal breaks for a total of about 6 hours in an 8 hour workday; (4) sit with normal breaks for a total of about 6 hours in an 8 hour workday; (5) occasionally climb ramps and stairs; (6) never climb ladders, ropes, or scaffolds; (7) occasionally balance, kneel, crouch, stoop, and crawl; (8) does not require more than frequent manipulation using the bilateral lower extremities, such as foot controls or foot pedals; (9) does not involve hazards, such as dangerous machinery, motor vehicles, unprotected heights, or vibrations; (10) frequently reach; (11) frequent fine and gross manipulation; (12) simple, routine, and repetitive tasks that can be explained; (13) SVP 1-2, which involve making simple decisions; (14) only occasional changes in routine; and (15) only occasional contact with others.

Tr. 15. In reaching this determination, the ALJ evaluated the totality of the evidence in the record, including objective medical and psychiatric reports, medical opinion evidence, Plaintiff's testimony, and the testimony of Plaintiff's friend. Tr. 15-20. The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause his alleged symptoms, his testimony regarding the intensity, persistence, and limiting effects of those symptoms was not consistent with the medical evidence and other evidence in the record because the evidence generally did not support the alleged loss of functioning. Tr. 16.

At step four, the ALJ found that Plaintiff is unable to perform past relevant work. Tr. 21. At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 21. The ALJ reached this conclusion with the assistance of a vocational expert ("VE") who evaluated Plaintiff's age, education, work experience, and RFC. Tr. 22. Given Plaintiff's classification as a younger individual with at least a high school education who can speak English, along with the limitation of unskilled light work, the VE determined that the jobs available to Plaintiff included cleaner, laundry folder, and assembler. Id. The ALJ thus

concluded that Plaintiff was not disabled within the meaning of the Act from October 15, 2016 through the date of his decision. Id.

## III.   ANALYSIS

Plaintiff urges the Court to reverse the Commissioner's final administrative decision and order the payment of benefits or, in the alternative, vacate and remand the ALJ's decision. First, he argues that the ALJ did not adequately consider Plaintiff's obesity in his determination. Pl. Br. at 4, ECF No. 9. Second, Plaintiff maintains that the ALJ's RFC determination was not based on substantial evidence. The Court disagrees and addresses each argument in turn.

### A.  The ALJ's Consideration of Obesity

Plaintiff first argues that the ALJ did not properly analyze, discuss, or consider Plaintiff's severe obesity in accordance with the Commissioner's own mandates.

An ALJ must provide a "discussion of the evidence and an explanation of reasoning for his conclusion sufficient to enable meaningful judicial review." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). "Conclusory statements that a condition does not constitute the medical equivalent of a listed impairment are insufficient." Id. "An ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Id. (citing Social Security Ruling 00-3p). "A blanket statement that an ALJ has considered evidence [of obesity] is not the same thing as an ALJ actually discussing the evidence." Halsey v. Comm'r of Soc. Sec., No. 15-6311, 2016 WL 6304444, at *5 (D.N.J. Oct. 25, 2016).

The ALJ in this case determined that Plaintiff's obesity was a "severe impairment" at step two, and at the outset of the step three analysis, the ALJ acknowledged the Commissioner's guidance requiring him to consider the effects of Plaintiff's obesity. Tr. 13. The ALJ then

concluded obesity alone or combined with other impairments did not meet the severity of any listing, while noting that "[t]he claimant's limitations due to obesity are reflected in the below residual functional capacity." Id.  Then, before step four, the ALJ considered the entire record in deciding Plaintiff's RFC.  In doing so, he noted that "the claimant is six feet and one inch tall and weighs 228 pounds," which "results in a body mass index (BMI) of 30.08, categorizing the claimant as obese." Tr. 17.  The ALJ found that due to Plaintiff's obesity, he "experiences greater functional limitations than might be expected from his other severe impairments alone, as the aforementioned finding of [RFC] accounts for these limitations." Id.

Plaintiff argues that while the ALJ claims he fully considered Plaintiff's obesity, the ALJ failed to shed light on how he considered obesity and what specific obesity-related limitations are reflected in the RFC.

First, the Court notes that the ALJ acknowledged his consideration of the cumulative effect of Plaintiff's obesity on certain impairments, noting Plaintiff's BMI and that Plaintiff experiences greater functional limitations as a result.  However, even if the Court agrees with Plaintiff that the ALJ's opinion lacks an in-depth discussion of the specific effect of obesity on his impairments, the Third Circuit has held that remand is not required where a failure to further discuss obesity "would not affect the outcome of the case." Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

In Rutherford, the claimant argued that the ALJ failed to consider her obesity, a condition present in her medical records. Id.  The Third Circuit found, however, that the claimant never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments. Id.  The Third Circuit found that a "generalized" assertion that "her weight makes it more difficult to stand, walk and manipulate her hands and fingers," was

insufficient to require a remand where the record indicated that the ALJ "relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments." Id.; see also Cosme v. Comm'r Soc. Sec., 845 F. App'x 128, 132 (3d Cir. 2021) (finding that remand was not required when claimant "fail[ed] to identify how his obesity would affect the five-step-evaluation process beyond a mere generalized response that it would 'obviously negatively impact [his] COPD and back pain'" and thus finding the claimant "failed to demonstrate how consideration of his obesity would affect the outcome of the case"); Woodson v. Comm'r Soc. Sec., 661 F. App'x 762, 765 (3d Cir. 2016) (affirming ALJ decision when claimant "never point[ed] to specific medical evidence in the record to demonstrate that his obesity, in combination with other impairments, is sufficiently disabling," and the evidence before the ALJ suggested that the claimant walked without assistive devices and had a normal gait).

     A similar analysis applies here. When asked about his medical issues by the ALJ, Plaintiff never mentioned obesity. Tr. 41. The record does not reflect that Plaintiff ever complained about his weight or that it affected his already-existing issues. Plaintiff, like the claimant in Rutherford, points to nothing in the record to show that greater RFC limitations should result from his obesity. Even though the ALJ here included Plaintiff's obesity as a severe impairment, Plaintiff has not specified how his obesity would affect the analysis beyond what the ALJ discussed in his decision. Moreover, Plaintiff's medical records frequently report Plaintiff's weight, but contain no opinions that his obesity added to his limitations. Because his doctors and examiners must also have been aware of Plaintiff's obesity, the ALJ's adoption of their conclusions constitutes a satisfactory, if indirect, consideration of that condition. Thus, to the extent Plaintiff argues his obesity should have caused further functional limitation, his position is devoid of any evidentiary support. See, e.g., Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (holding that the

claimant did "not identify specific avenues for meeting or equaling specific listings that the ALJ should have considered but did not" and "offer[ed] no explanation of how further analysis could have affected the outcome"); Holley, 975 F. Supp. 2d at 482 (upholding ALJ decision where ALJ "acknowledged that obesity could cause exertional postural limitations . . . [but] Plaintiff d[id] not point to anything in the medical record which states any such limitations associated with her weight").

In sum, the ALJ's decision reflects sufficient consideration of the cumulative impact of Plaintiff's impairments and Plaintiff fails to point to anything in the record that would change the outcome. Thus, any error by the ALJ in not discussing obesity further was harmless.

### B. The ALJ's RFC Determination

Plaintiff next argues that the RFC is not based on substantial evidence because the ALJ rejected the opinions of every doctor who examined and treated Plaintiff.[2]

An RFC should account for the most activity that a claimant can perform despite his limitations. 20 C.F.R. § 416.945(a). An ALJ's RFC determination must "be accompanied by a clear and satisfactory explication of the basis on which it rests" to enable judicial review. Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). The ALJ is ultimately responsible for making an RFC determination based on the medical evidence, and must "include a narrative discussion describing how the evidence supports each conclusion." Harris v. Comm'r of Soc. Sec., No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010) (citing Social Security Ruling 96-8p). An ALJ's

---

[2] Plaintiff also argues that under step two, the ALJ wrongly asserted that he found some of Plaintiff's impairments non-severe without stating what non-severe impairments were excluded. The Court rejects this argument.

The ALJ found that Plaintiff had seven severe impairments and that anything else briefly mentioned in the record but not specifically mentioned in the decision was considered "non-severe." Tr. 13. The ALJ further stated that he gave special attention to the duration and frequency of conditions for which Plaintiff sought treatment in reviewing the record. Id. Plaintiff fails to identify any impairments which the ALJ did not properly classify as severe or non-severe, and fails to note any additional functional limitations stemming from those impairments that were not accounted for in the RFC. Thus, this argument holds no merit.

10

"findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020). Moreover, Plaintiff has the burden to demonstrate how any alleged error "could have affected the outcome of his disability claim." See Holloman, 639 F. App'x at 814.

Here, the ALJ supported his RFC determination with a detailed narrative discussion of the available medical and nonmedical evidence, ultimately concluding that Plaintiff had the RFC to perform light work, with certain additional restrictions. Tr. 15. The ALJ considered Plaintiff's subjective testimony of his symptoms but concluded that his accounts of the intensity, persistence, and limiting effects of his conditions were inconsistent with the evidence in the record. Tr. 16. As to his physical impairments, for example, the ALJ noted that Plaintiff's subjective testimony showed complaints of knee, hand, and lower back pain, Tr. 80, 426, 462, that he had tenderness of the elbows, wrists, and fingers, Tr. 464, and that he was diagnosed with osteoarthritis, Tr. 461. However, his medical reports showed no evidence of swelling or hand deformity, normal gait without use of an ambulation aide, ability to heel walk, toe walk, and squat with no difficulty, good fine and gross manipulation of both hands, good mobility and strength of the upper extremities, ability to conduct normal daily activities such as shopping, laundry, cleaning, cooking, driving, and daily hygiene, and no significant neurological, sensory, or motor impairments, Tr. 461-65.

Next, the ALJ reviewed record evidence surrounding Plaintiff's mental impairments, including evaluations from Dr. Syeda Hasan, Dr. Kim Arrington, and Dr. Ernesto Perdomo, and medical opinions and prior administrative medical findings, including the opinions of Disability Determination Services ("DDS"), Plaintiff's treating psychiatrist, Dr. Thomas D'Amato, and Dr. Sharon Kahn, who testified at the hearing. Tr. 17-20. The ALJ considered each evaluation and report in depth and was clear in describing the weight he assigned to various opinion evidence in

the record, indicating how certain medical opinions were inconsistent with the objective test results or were otherwise internally inconsistent. See, e.g., Tr. 19 (finding certain opinions only partially persuasive because "Dr. Garrison and Dr. Shapiro did not have the opportunity to review a more recent psychiatric consultative examination conducted in March 2019, where the claimant's short-term and long-term memories were good, and the claimant's concentration was fair").

Viewing the ALJ's decision and record as a whole, the Court concludes that the ALJ provided substantial evidence to support the RFC determination. Plaintiff's arguments to the contrary are unavailing.

First, Plaintiff contends that the ALJ incorrectly discounted a medical source statement issued by Dr. Cornejo, who performed an orthopedic evaluation of Plaintiff. Pl. Br. at 28-29. In Dr. Cornejo's medical source statement following the orthopedic evaluation, Dr. Cornejo submitted, in part, that in an eight-hour workday, Plaintiff could sit for six hours, stand or walk for an hour, and engage in occasional reaching, handing, fingering, feeling, pushing, and pulling. Tr. 469-70. The ALJ found Dr. Cornejo's opinion partially persuasive, explaining that he agreed with the evaluation that Plaintiff should be restricted to light work and can occasionally balance, kneel, crouch, stoop, and crawl, but that the opinion that Plaintiff can only stand or walk for one hour in the workday was inconsistent with Dr. Cornejo's own opinion that Plaintiff can work at a light exertional level and that Plaintiff has a normal gait, does not need an assistive device, and has no significant neurological, sensory, or motor impairments. Tr. 19-20. The ALJ determined that Dr. Cornejo's opinion was also inconsistent with the record as a whole, which revealed conservative treatment of Plaintiff's musculoskeletal impairments, consisting of physical therapy and some pain medications. Tr. 19. Thus, the Court finds that the ALJ gave "a clear and satisfactory explication" of the basis on which he made his decision. See Cotter, 642 F.2d at 704.

Plaintiff further argues that the ALJ offered no support for his RFC determination that Plaintiff can frequently reach, finger, and handle, given Dr. Cornejo's assessment that Plaintiff could engage in only occasional gross manipulation. Pl. Br. at 28-30. However, in reaching the RFC assessment, the ALJ considered that Plaintiff had some tenderness of the elbows, wrists, and fingers, but that there was no evidence of swelling or hand deformity, MCP subluxation, or ulnar deviation. Tr. 16. The ALJ considered that Plaintiff had good fine and gross manipulation of both hands, good mobility and strength of his upper extremities, and the ability to drive himself to his own consultative examination. Id. Thus, even though the ALJ did not specifically address Dr. Cornejo's suggestion of occasional manipulation rather than frequent manipulation limitation, the ALJ adequately discussed the record support for his RFC findings surrounding manipulation of Plaintiff's hands.[3]

Turning next to the non-exertional RFC, Plaintiff argues that the ALJ improperly rejected the opinions, diagnoses, and conclusions of Dr. D'Amato and the Commissioner's examining psychologists, Drs. Perdomo and Arrington, and instead inappropriately relied on Dr. Kahn's hearing testimony. Pl. Br. at 31-32. The ALJ considered Plaintiff's self-reports, first noting Plaintiff's testimony that he often fights with people, has mood swings and panic attacks, and occasionally smokes marijuana. Tr. 16. The ALJ next considered all of Plaintiff's psychiatric evaluations and medical opinions and detailed the many findings and diagnoses. Tr. 17-18. The Court disagrees with Plaintiff that the ALJ invested "total evidentiary acceptance" in Dr. Kahn's opinion, instead finding that the ALJ fully considered and accepted other parts of the medical

---

[3] To the extent Plaintiff also argues that the VE presented potential jobs that require more than "frequent fine and gross manipulation," the Court rejects this argument. Under the hypothetical presented to the VE by the ALJ at the hearing, the ALJ specifically positioned the limitation of frequent fine and gross manipulation and the VE listed three jobs which comport with that limitation. The VE's clarification that a laundry folder folds laundry all day, Tr. 86, is not the equivalent of the VE submitting that Plaintiff would be required to conduct more than "frequent" fine and gross manipulation as Plaintiff suggests. Pl. Br. at 30-31.

13

record—for example, by finding Dr. Arrington's opinion persuasive and Drs. Garrison and Shapiro's opinions partially persuasive. To the extent the ALJ found evidence unpersuasive, the ALJ provided appropriate reasoning and sufficiently enabled judicial review. See Harris v. Comm'r of Soc. Sec., No. 11-2961, 2012 WL 4504486, at *7 (D.N.J. Sept. 27, 2012) ("If the ALJ decides to reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review."). For example, the ALJ explained that Dr. Perdomo's medical source statement was unpersuasive because it was inconsistent with his own mental status examination, which had benign findings that showed no history of psychiatric hospitalizations and relied heavily on the subjective report of limitations provided by Plaintiff himself. Tr. 20. Instead, the ALJ found Dr. Kahn's testimony persuasive because she is a specialist and familiar with the Social Security policies and regulations, she had the benefit of reviewing the complete documentary record, and she provided detailed explanations with record evidence to support her opinion. Id.

Plaintiff specifically asserts that the ALJ failed to discuss Dr. Kahn's testimony that Plaintiff's periodic smoking of marijuana is a "material factor" in his disability and that Plaintiff meets the psychiatric listings at paragraph 12.08, but that he would not suffer listing level psychiatric impairments absent marijuana use. Pl. Br. at 32. The Court disagrees with Plaintiff's interpretation of Dr. Kahn's testimony and finds that Dr. Kahn in fact testified that Plaintiff did not meet the listings with or without drug use. Tr. 53-54. Thus, the ALJ did not improperly fail to mention this testimony in his decision and instead rightfully credited Dr. Kahn's testimony. See Pl. Br. at 32 n.9.

Finally, Plaintiff argues that the ALJ improperly disregarded Plaintiff's need for his dog for comfort whenever he leaves his home, including at a potential workplace. Pl. Br. at 34. He

asserts that the VE testified that there are no studies showing that Plaintiff could bring his animal with him to those jobs, and thus the VE presented no reliable vocational employment opportunities to support the ALJ's decision at Step Five. The Court disagrees.

On April 17, 2018, Dr. D'Amato wrote a note stating that Plaintiff "requires the use of a service animal 'Bob,'" which "offers comfort/support, helps [Plaintiff] relax, provides calming affect." Tr. 554. Dr. D'Amato then stated: "Please allow him to have his above dog with him at all times and live with him as well. Please accommodate him." Id. At the administrative hearing, Dr. Kahn testified that there was no evidence in the record that Plaintiff's dog was a service animal that is trained to assist Plaintiff in any way. Tr. 56-61. In fact, Plaintiff admitted that the dog had no special training and was not trained by a doctor or a professional. Tr. 73. Instead, Plaintiff previously owned the dog and received a note to use the dog as an emotional support animal.

In discussing Plaintiff's RFC, the ALJ discussed Dr. Kahn's testimony in distinguishing Plaintiff's dog as an emotional support dog rather than a service animal. Tr. 19. The ALJ credited Dr. Kahn's testimony that Dr. D'Amato's note about the dog held no weight because there is no evidence suggesting that Plaintiff owns a professionally trained service animal. The Court thus finds that when considering the RFC, the ALJ appropriately weighed the evidence and found that Plaintiff does not have a service animal that he needs in order to perform the light work jobs. Because the ALJ rejected Plaintiff's need for the emotional support dog in determining the RFC, the VE's inability to state whether Plaintiff could perform the suggested jobs with a dog in his lap is immaterial.[4]

---

[4] In addition, both Dr. D'Amato and Dr. Kahn refer to the dog as an "accommodation" rather than a medical necessity. See, e.g., Tiffany B. v. Kijakazi, No. 20-2696, 2022 WL 224817, at *6 (S.D. Ind. Jan. 26, 2022) (finding ALJ's failure to include the use of a companion animal in the RFC analysis harmless where the claimant had a letter from her healthcare provider but failed to establish that she received a therapy-dog prescription or that an emotional support animal was medically necessary for her to work). Nothing precludes Plaintiff from seeking the use of an emotional support dog as a reasonable accommodation in the workplace under the Americans with Disabilities Act. The ALJ,

15

Consequently, the ALJ supported his RFC determination with substantial evidence.

### IV.   CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED**.

Date:  February 24, 2022                                          **/s/ Madeline Cox Arleo**
                                                                                    **Hon. Madeline Cox Arleo**
                                                                                    **UNITED STATES DISTRICT JUDGE**

---

however, was not required to consider Plaintiff's potential success in seeking this accommodation when the ALJ determined that Plaintiff does not require the use of an emotional support dog in order to work.